UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP<br><br>*Plaintiff*,<br><br>v.<br><br>ADELA PATRICIA ROSENTHAL-HIDALGO, et al.,<br><br>*Defendants*. | Civil Action No. 1:19-cv-01331 (CJN) |

**ORDER**

This case is before the Court on two motions to dismiss. ECF Nos. 7 & 71. In the first, Bus-Comm and Crediflash move to dismiss for lack of personal jurisdiction. In the second, the Rosenthal Defendants, Cable Color, Fondo de Inversiones (FDI), and Prestadito de Costa Rica assert that the complaint insufficiently alleges who did what, while Cable Color asks the Court to dismiss it from the suit due to pending arbitration on a related matter. For the reasons stated below, the Court denies both motions.

**I.    The Complaint Adequately Alleges Personal Jurisdiction Over Bus-Comm and Crediflash.**

Defendants Bus-Comm and Crediflash assert the Complaint insufficiently alleges personal jurisdiction; as they put it, "there are **no** allegations of the Complaint (conclusory or otherwise) attempting to tie Bus-Comm or Crediflash to Washington D.C." First Defs.' Mot. Memo., ECF No. 7-1, at 3 (emphasis in original). They also argue that even if the D.C. long arm statute were satisfied, the Complaint fails to allege the minimum contacts to satisfy constitutional due process

1

because, *inter alia*, they have no connection to D.C. and are not alleged to have committed any wrongs for which relief is sought.

Quinn Emanuel argues that the Complaint adequately alleges personal jurisdiction because Bus-Comm and Creidflash are alter egos of Cesar Rosenthal. Pl.'s Opp. to First Defs.' Mot., ECF No. 40. According to Quinn Emanuel, the allegations suffice to pierce the veil between the two corporations and Cesar Rosenthal. And, because Cesar's contacts with D.C. are sufficient to establish personal jurisdiction (he promised to pay D.C. lawyers legal fees through assets held by the two corporations), Plaintiff asserts that's enough for the Court to assert personal jurisdiction over Bus-Comm and Crediflash.[1]

The Court agrees. Both the D.C. long-arm statute and the constitution are satisfied because Plaintiff alleges that, through Cesar Rosenthal or as his alter egos, Bus-Comm and Crediflash retained Quinn Emanuel for litigation services provided by D.C. lawyers, largely in D.C.

To begin, the law of the state of incorporation determines whether the corporate veil will be pierced. *United States v. TDC Mgmt. Corp.*, 263 F. Supp. 3d 257, 266–67 (D.D.C. 2017). Both Bus-Comm and Crediflash are Florida corporations. Compl. ¶¶ 29; 30. In Florida, to "pierce the corporate veil"—the plaintiff must prove:

> (1) the *shareholder* dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the *shareholders* were in fact alter egos of the corporation;
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant

---

[1] The Complaint could also be read to allege that Cesar Rosenthal is an agent of the two corporations and thus they hired Plaintiff for legal services.

*Molinos Valle Del Cibao, C. por A. v. Lama,* 633 F.3d 1330, 1349 (11th Cir. 2011) (quoting *Gasparini v. Pordomingo,* 972 So.2d 1053, 1055 (Fla. 3d Dist. Ct. App. 2008)) (emphasis added in *Molinos*).

The Complaint is full of allegations that, if true, would render the corporations alter egos of Cesar Rosenthal. It includes several allegations to the effect that "Bus-Comm and Crediflash are two Florida entities with *no function* other than to hold assets for Cesar Rosenthal . . . including real property and U.S. bank accounts." Compl. at ¶ 3 (emphasis added); *see also id.* ¶¶ 80, 106. Plaintiff alleges that Bus-Comm and Crediflash are "wholly owned and controlled by Cesar Rosenthal and [their] only function is to hold assets for Cesar Rosenthal in the United States including" the Florida Rosenthal Property and a U.S. bank account. Compl. at ¶¶ 29, 30. The fact that they are alleged to be "wholly owned and controlled" is further substantiated by allegations of the USAO and OFAC inventories. "Both inventories reflect that the Florida Rosenthal Property and half of the U.S. Rosenthal Account belong to Cesar Rosenthal, despite that they are under the name Bus-Comm and Crediflash, respectively." Compl. at ¶ 55. As to the second and third elements, the Complaint alleges Cesar Rosenthal promised to pay Plaintiff using corporate assets but has not done so. *See, e.g., id.* at ¶¶ 79–80, 106.[2]

And personal jurisdiction has been adequately alleged as to Cesar Rosenthal. The long-arm statute states that:

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly by an agent, as to a claim for relief arising from the person's (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia[.]

---

[2] The Plaintiff made similar allegations as to Prestadito and Cable Color, but the Court need not address them as neither company contested personal jurisdiction.

D.C. Code § 13-423(a).  Here, Plaintiff's claims against the two corporations arise out of services contracted for on D.C. letterhead, *see* Compl. ¶¶ 59, 85, 127, and the contracted services were to be provided in D.C., *see id.* ¶¶ 2 (Plaintiff performed legal work in D.C.), 16 (Defendants promised to pay for Plaintiff's services), 80 (Cesar Rosenthal represented to Quinn Emanuel that he would pay for Plaintiff's services), 106 (same).  These services included work done for a D.C.-based forum.  *See* ¶¶ 9–12, 15, 47–54, 58, 60–61, 63–72 (describing legal services provided for OFAC proceedings).  This is enough.  *See, e.g.*, *Relman, Dane & Colfax PLLC v. Fair Housing Council of San Fernando Valley*, 2019 WL 3779901, at *11–15 (D.D.C. Aug. 12, 2019) (personal jurisdiction established where District of Columbia address appeared on retainer agreement, choice of law section selected District of Columbia law, client did not travel to District of Columbia but communicated via email and phone frequently with lawyers in District of Columbia, matter was pending in California but "nearly all" of firm's work was done in District of Columbia, and client maintained relationship for years knowing that work was done in District of Columbia); *Hulme v. Ferris*, 1987 WL 11702, at *1 (D.D.C. May 21, 1987) (finding former client had "meaningful contacts with [the District of Columbia] over a protracted period of time" and "fair warning that she could be brought into court here" where she hired District of Columbia attorneys and worked with them for two years); *Digital Broadcast Corp. v. Rosenman & Colin, LLP*, 847 A.2d 384, 391 (D.C. Ct. App. 2004) (personal jurisdiction established where former client retained District of Columbia office of law firm because of securities regulation expertise, and retainer agreement was on the District of Columbia office's stationary).  The same allegations satisfy the constitutional

requirements of due process, because by retaining D.C. lawyers Cesar purposely availed himself of the laws of D.C.[3]

## II.   The Complaint Includes Sufficient Allegations to Put Defendants on Notice.

The Rosenthal Defendants, Cable Color, FDI, and Prestadito move to dismiss many of the claims for failure to differentiate which defendant took what action.  Second Defs.'s Mot., ECF No. 71, at 5–11.

Quinn Emanuel contends that the Complaint contains a "clear and concise statement" that put the Defendants on notice about their alleged wrongdoing and the legal grounds of their involvement in the suit, thereby meeting the requirements of Rule 8.  Fed. R. Civ. P. 8.[4]  For example, Quinn Emanuel argues, the Complaint alleges that "in mid-October 2015, the Rosenthal family hired Quinn Emanuel," and that "[t]he Defendants engaged Quinn Emanuel to (a) represent them[.]"  Compl. at ¶¶ 12, 57.  Moreover, the Complaint asserts that the Defendants did not just hire Quinn Emanuel, but "the Rosenthal Defendants promised Quinn Emanuel that they would pay with the dividends flowing from their Cenosa Shares," which are owned through Prestadito, which they control.  Compl. at ¶ 17.  Quinn Emanuel also alleges that "during in person meetings in Honduras, the Defendants verbally agreed to pay Quinn Emanuel on an hourly fee basis and did not condition payment on any outcome."  Compl. at ¶ 58.[5]

---

[3] Parts of the Complaint also appear to allege that Bus-Comm and Crediflash directly retained Plaintiff through their agent, Cesar Rosenthal.

[4] In the Complaint, Plaintiff tags Patricia, Carlos, and Cesar Rosenthal as the "Rosenthal Defendants;" then calls the Rosenthal Defendants, Cable Color, and FDI the "Defendants;" and then refers to Bus-Comm, Crediflash, and Prestadito as the "Joined Defendants."  Compl. at p. 3. The Court appreciates Plaintiff's desire to keep the pleadings short but wonders whether these particular groupings added more confusion than concision.

[5] The Complaint leaves something to be desired with regards to *how* the corporate defendants "verbally agreed to pay" Plaintiff.  Compl. at ¶ 58.  This particular allegation appears compatible with both an agency theory and an alter ego theory.

The Court agrees that the Complaint is sufficient, though it is a close call. To be sure, the Complaint does not specify precisely which Rosenthal did what, and who was benefitted by what actions. But it does not need to. Rule 8 requires only "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8. By failing to differentiate between and among Defendants, the Complaint essentially alleges that Patricia, Carlos, and Cesar each (and therefore all) did what the Complaint alleges the Rosenthal Defendants, did; that that the Rosenthals, together with Cable Color and FDI, each (and therefore all) did what the Complaint alleges the "Defendants" did. *See* Compl. at p. 3. Given the relatively specific allegations regarding what each group did, this is enough to put each defendant sufficiently on notice about the nature of the suit and the legal bases for which they would have to provide a defense. "[N]othing in Rule 8 prohibits collectively referring to multiple defendants where the claims alert the defendants that identical claims are asserted against each defendant." *Tardibuono-Quigley v. HSBC Mortg. Corp. USA*, 2017 WL 1216925, at *8 (S.D.N.Y. Mar. 30, 2017). While the allegations still should "provide enough information to put each defendant on notice of its alleged role in the misconduct at issue," here the allegation is that all the relevant groups of defendants—the Rosenthal Defendants, Defendants, or Joined Defendants—did all such activities. *Id.*

The Rosenthal Defendants, Cable Color, FDI, and Prestadito also argue that various claims should be dismissed because certain claims are incompatible with other claims. *See, e.g.*, Second Defs.' Mot. at 6–10 (arguing, for example, quantum meruit is inconsistent with a contract, and injunctions and liens are unnecessary given the request for monetary damages). But Plaintiffs can and did plead claims in the alternative. *See Butler v. Enter. Integration Corp.*, 459 F. Supp. 3d 78,

100–02 (D.D.C. 2020); Compl. at ¶¶ 93, 98, 102, 120 (noting Counts II, III, and IV are alternatives to Count I, and Count VII is an alternative to Count VI).[6]

### III.     Count VIII Need Not Be Arbitrated.

Cable Color moves to dismiss Count VIII, which alleges that Cable Color for guaranteed Yani Rosenthal's payment of legal fees, on the ground that Yani is in mandatory arbitration over the fees. Because a guarantor's obligations are often co-extensive with those of the guaranteed party, *see O & Y Landmark Assocs. of Virginia v. Nordheimer*, 725 F. Supp. 578, 581 (D.D.C. 1989), Cable Color argues, Quinn Emanuel must bring this claim in arbitration.

Quinn Emanuel opposes arbitration, noting that nothing in Cable Color's guarantee agreement calls for arbitration or requires Cable Color to assume Yani Rosenthal's arbitration responsibility. Pl.'s Opp. to Second Defs.' Mot., ECF No. 74, at 8. In addition, Quinn Emanuel argues dismissal is improper because the pending arbitration is stayed because of Yani Rosenthal's nonpayment of the arbitration fee. *Id.*

The Court agrees with Quinn Emanuel on both fronts. While a guarantor's obligations are often co-extensive with those of the guaranteed party, that is usually because guarantee contracts require the guarantor to step into the shoes of the guaranteed party. *See Nordheimer*, 725 F. Supp. at 580–84 (noting that, in that guarantor agreement, the guarantor "assume[s] the rights and obligations of [the guaranteed party] on the same terms and conditions as contained in the" contract when the contract includes language indicating as much). Here there is no such provision in Cable Color's agreement—nor does Cable Color assert that there is. *See* Second Defs.' Reply, ECF No.

---

[6] The Court reads Motion 71 to suggest Prestadito moves to dismiss Counts I, II, III, and IV. But the Court does not understand the Complaint to have raised such claims against Prestadito, nor does Quinn Emanuel separately defend those counts. As a "Joined Defendant," Prestadito only faces counts V, VI, and VII.

75, at ¶ 7. Even if there were such a provision, Yani Rosenthal's (and, assuming it were obligated to participate, Cable Color's) alleged nonpayment of the arbitral fees would weigh against granting dismissal until such compliance with the arbitration agreement were demonstrated.[7]

\* \* \*

Accordingly, it is

**ORDERED** that Bus-Comm and Crediflash's Motion to Dismiss, ECF No. 7, is **DENIED**. It is further

**ORDERED** that the Rosenthal Defendants, Cable Color, FDI, and Prestadito's Motion to Dismiss, ECF No. 71, is **DENIED**.

DATE: August 9, 2022

CARL J. NICHOLS
United States District Judge

---

[7] Cable Color also asserts the case should be dismissed to conserve judicial and to avoid inconsistent judgment. Second Defs.' Reply at ¶ 7. But neither is a sufficient ground for dismissal.