## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

QUINN EMANUEL URQUHART
& SULLIVAN, LLP,

Plaintiff,                                                    CASE NO: 1:19-cv-01331-CJN

v.

ADELA PATRICIA ROSENTHAL-HIDALGO,
BUS-COMM, INC., CABLE COLOR, S.A. DE C.V.,
CARLOS JOSE ROSENTHAL-HIDALGO,
CESAR AUGUSTO ROSENTHAL-HIDALGO,
CREDIFLASH, LLC, FONDO DE INVERSIONES, S.A.,
PRESTADITO DE COSTA RICA, S.A.,

Defendants.

-----------------------------------

## ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM
## AND DEMAND FOR TRIAL BY JURY OF DEFENDANT CABLE COLOR S.A. DE C.V.

Defendant, CABLE COLOR S.A. DE C.V., (hereinafter referred to as the "Defendant") by and through its undersigned counsel, hereby files this Answer, Affirmative Defenses, CounterComplaint and Demand for Trial by Jury and states as follows:

1. Admitted.

2. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

3. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

4. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

5.      The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

6.      The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

7.      The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

8.      The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

9.      The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

10.     The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof

11.     The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

12.     The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

13.     Admitted.

14.     The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

15.     The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demand strict proof thereof.

16.     The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

17. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

18. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

19. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

20. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

21. Denied.

22. Denied.

23. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. Admitted.

29. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

30. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

31. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

32. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

33. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

34. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

35. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

36. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

37. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

38. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

39. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

40. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

41. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

42. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

43. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and

demands strict proof thereof.

44. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

45. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

46. Admitted.

47. Admitted.

48. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

49. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

50. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

51. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

52. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

53. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

54. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

55. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

56. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

57. Denied.

58. Denied.

59. Admitted.

60. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

61. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

62. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

63. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

64. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

65. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

66. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

67. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

68. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

69. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

70. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

71. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

72. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

73. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

74. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

75. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

76. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

77. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

78. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

79. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

80. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and

demands strict proof thereof.

81. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

82. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

83. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

84. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

85. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

86. Same Answers 1-85.

87. Denied.

88. Denied.

89. Denied.

90. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

91. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

92. Denied.

93. Same Answers 1-92.

94. Denied.

95. Denied.

96. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

97. Denied.

98. Same Answers 1-97.

99. Denied.

100. Denied.

101. Denied.

102. Same Answers 1-101.

103. Denied.

104. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

105. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

106. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

107. The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

108. Denied.

109. Same Answers 1-108.

110. Denied.

111. Denied.

112. Denied.

113. Denied.

114.	Same Answers 1-113.

115.	Denied.

116.	The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

117.	The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

118.	Denied.

119.	Denied.

120.	Same Answers 1-119.

121.	Denied.

122.	Denied.

123.	Denied.

124.	Denied.

125.	Denied.

126.	Same Answers 1-125.

127.	Admitted.

128.	Denied.

129.	The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

130.	The Defendant is without sufficient knowledge to deny/admit, therefore, denied and demands strict proof thereof.

131.	Denied.

## AFFIRMATIVE DEFENSES

1. Plaintiff has failed to state a cause of action for breach of contract, quantum meruit, unjust enrichment, promissory estoppel, mandatory injunction, express lien or equitable lien. (Counts 1-7).

2. There is no privity between the Plaintiff and CABLE COLOR to support any claims (Counts 1-7) against CABLE COLOR.

3. Plaintiff is barred from pursuing any claims (Counts 1-7) against CABLE COLOR because any contract found to exist between the parties, if any, was first breached by Plaintiff through its improper and inflated billing practices and the contract, if any, was terminated, excusing Defendant CABLE COLOR from performance under any contract found to exist.

4. Plaintiff's purported claims of relief are barred in whole or in part by the doctrine of equitable estoppel. Specifically, Plaintiff is estopped from recovering fees for any work billed after the Plaintiff's services were terminated by non-parties Jaime Rosenthal and/or Yani Rosenthal as referred to in Plaintiff's complaint. .

5. Plaintiff is barred from collecting fees and costs it performed for third parties that are not any of the Defendants in this case.

6. Plaintiff is barred from all the claims in this case for failing to include an indispensible party in this case. Specifically, Plaintiffs failed to name any non-parties -- Inversiones Continental, Banco Continental and/or Empacadora Continental – for whom Plaintiff performed said legal work for.

7. Plaintiff's claims are all barred in whole or in part by the doctrine of unclean hands. Specifically, Plaintiffs are attempting to extort legal fees and costs from individuals and companies whom did not agree with Plaintiff to pay for said legal work in dispute.

8. Any amount owed to Plaintiff is reduced, set off or eliminated by what Plaintiff owes Defendants for damages to Defendant, as alleged in Defendants' CounterComplaint.

9. Plaintiff has failed to mitigate its damages, if any, and as a consequence thereof, Plaintiff is not entitled to recover the amount of damages alleged, or any other damages.

10. Plaintiff's claims are all barred in whole or in part by the doctrine of has failure of consideration. Specifically, there was no consideration exchanged between Plaintiff and Defendants to form any contract or alternative claims of unjust enrichment or quantum meruit upon which claims can be brought.

11. Plaintiff's claims are all barred in whole or in part by the doctrine of statute of frauds. Specifically, the law work performed exceeded one year requiring an agreement in writing between Plaintiff and Defendants which doesn't exist.

12. Plaintiff's claims are all barred in whole or in part by the doctrine of contributory negligence for Count 8. Specifically, Plaintiff was grossly negligent and committed professional malpractice when it was removed by OFAC from representing YANI ROSENTHAL as more fully described in CABLE COLOR's CounterComplaint causing damages to CounterPlaintiff described herein. Plaintiff's failed to complete all conditions precedent prior to initiating this lawsuit. In addition, Plaintiff never served Cable Color with any correspondence related to debts it allegedly guaranteed.

13. Express Limits on Scope of Guarantee. Plaintiff failed to identify what fees were governed under the guarantee, as Defendant is has not been provided notice of what type of fees CABLE COLOR guaranteed it was responsible for, thus it was unaware of what work performed under the retainer it was guaranteeing. See Bowyer v. Clark Equip. Co., 357 N.E.2d 290 (Ind.

Ct. App. 1976) (guaranty not absolute because it did not waive notice of incurring all liabilities; hence, failure to give notice of default on an open account discharged guarantor).

14.     Failure to Notify Guarantor of Debt.  Plaintiff failed to notify and obtain additional guarantees with regard to any changes in any retainer in which it allegedly guaranteed.

15.     Failure to Notify Guarantor of Borrower's Debt. Plaintiff failed to notify Defendant of any new retainers, or extensions to any retainer of any additional amounts with regard to any further litigations it may have incurred.

16. Failure to Notify Guarantor of Adverse Matters.   Plaintiff failed to notify Defendant of any adverse facts at the outset of the transaction that would materially increase Defendant's risk beyond that which the guarantor reasonably assumed including but not limited to Defendant's adverse results with OFAC.

16. Material Alteration of Underlying Debt.  Plaintiff increased the scope of risk and failed to notify Defendant of continuing representation and attorney's fees for other matters, and thus changed Defendant's scope of risk.

## **COUNTERCOMPLAINT**

This is a CounterComplaint filed by CABLE COLOR S.A. DE C.V., ("CABLE COLOR" or "CounterPlaintiff") a corporation formed and operating in the nation of Honduras, by and through its undersigned attorney, to recover damages arising from professional malpractice, negligence and breach of contract of a legal retainer signed between the parties. These three (3) causes of action are alleged to have been committed by QUINN EMANUEL URQUHART & SULLIVAN LLP, ("QUINN EMANUEL" or "CounterDefendant") against CABLE COLOR as guarantor for payment of work performed by QUINN EMANUEL for the benefit of YANI ROSENTHAL in the course of QUINN EMANUEL's legal representation of Mr. Rosenthal.

## THE PARTIES

1.      CounterDefendant, QUINN EMANUEL, is a California limited liability partnership with an office in Washington D.C. that provides legal services.

2.      CounterPlaintiff, CABLE COLOR, is a corporation formed and operating in the nation of Honduras.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this CounterComplaint because the injurious legal work more fully described herein and performed by QUINN EMANUEL for YANI ROSENTHAL and CABLE COLOR (as guarantor) was primarily performed in the District of Colombia. Further, this CounterComplaint is being brought in conjunction with the initial complaint that was filed and is pending in this district.

## FACTUAL BACKGROUND

4.      That CounterPlaintiff CABLE COLOR and CounterDefendant QUINN EMANUEL both signed a Guarantee Agreement (attached as Exhibit "A") dated October 25, 2015.  The Guarantee Agreement between QUINN EMANUEL and CABLE COLOR concerned the guarantee of any outstanding attorney fees and/or costs owed by YANI ROSENTHAL in his retainer agreement with QUINN EMANUEL (attached as Exhibit "B") dated October 19, 2015..

5.      That pursuant to the Retainer Agreement, QUINN EMANUEL agreed to provide two general services for YANI ROSENTHAL: 1) legal representation in a criminal case, Case No. 13-CR-413, to which YANI ROSENTHAL was a Defendant, and 2) legal representation in related proceedings brought by the United States Office of Foreign Assets Control ("OFAC").In addition, CABLE COLOR agreed to guarantee payment for these services. (See Exhibit "B")

6.      YANI ROSENTHAL's criminal case was about one of YANI ROSENTHAL's company buying cattle in Honduras.  The criminal case involved a company owned by YANI ROSENTHAL that bought cattle in Honduras (less than 10% of all the cattle YANI ROSENTHAL's company bought overall) from another company in Honduras which was owned by people in Honduras that were also involved in illicit drug trades.  YANI ROSENTHAL accepted responsibility for that mistake he and his company made and YANI ROSENTHAL pled guilty to one count related to buying beef and YANI ROSENTHAL was sentenced to three years in prison for this mistake.

6.      That QUINN EMANUEL breached the retainer agreement it had with YANI ROSNTHAL, in the course of the legal representation and thereby breached the agreement it also had with CABLE COLOR as guarantor in two ways: (1) that QUINN EMANUEL charged excessive fees in the criminal case, Case No. 13-CR-413, to which it unreasonably billed YANI ROSENTHAL an amount of more than $3 million dollars for legal services in a case which the legal services provided by QUINN EMANUEL to YANI ROSENTHAL should have been billed significantly less had the legal invoices been properly accounted for, and (2) that QUINN EMANUEL was removed from representing YANI ROSENTHAL by OFAC during the case because a partner in the firm of QUINN EMANUEL mistakenly sent an offensive email cussing about OFAC to OFAC that was intended to be circulated internally only at QUINN EMANUEL. In said email, upon information and belief, a partner at QUINN EMANUEL bad mouthed OFAC with expletives and colorful words bad enough that OFAC removed QUINN EMANUEL from representing YANI ROSENTHAL and OFAC demanded that QUINN EMANUEL no longer deal with OFAC on YANI ROSENTHAL's matter.

7. That as a result of QUINN EMANUEL being kicked off the OFAC matter for sending an offensive email, the law firm QUINN EMANUEL caused substantial harm to YANI ROSENTHAL in his efforts to be removed from a drug kingpin designation placed upon him by OFAC. The designation of YANI ROSENTHAL as a drug kingpin by OFAC should never have been placed on YANI ROSENTHAL, yet Mr. Rosenthal could not get removed from said designation in large part because of the negligent and offensive conduct by an attorney at QUINN EMANUEL that tainted YANI ROSENTHAL's efforts to be removed from the OFAC designation as a drug kingpin. After two years on being on this OFAC drug kingpin list, YANI ROSENTHAL was removed from the OFAC drug kingpin list without the help of QUINN EMANUEL. This email incident between QUINN EMANUEL and OFAC not only tarnished YANI ROSENTHAL by association by having his attorneys involved in this situation, but it also tarnished CABLE COLOR when QUINN EMANUEL filed suit against CABLR COLOR for unpaid fees that aren't owed and therein the lawsuit made numerous disclosures about CABLE COLOR and its owners in an effort to slander CABLE COLOR and portray the company publicly in a bad light.

8. That the drug kingpin designation by OFAC for more than two years has caused YANI ROSENTHAL financial losses of several millions of dollars in lost business and irreparable harm to Mr. Rosenthal's reputation. Further, YANI ROSENTHAL paid in excess of eighty thousand dollars ($80,000.00) to a second law firm which was unsuccessful in removing the drug kingpin designation placed upon YANI ROSENTHAL by OFAC mostly because of the damage QUINN EMANUEL caused to YANI ROSENTHAL who otherwise would have had an excellent case to be removed more than two years earlier from the OFAC drug kingpin designation.

9. That notwithstanding the excessive and unreasonable invoices QUINN EMANUEL sent to YANI ROSENTHAL in its legal representation of the criminal case of YANI ROSENTHAL and the disastrous representation by QUINN EMANUEL with OFAC, Mr. Rosenthal still paid, in good faith, approximately $2.7 million to QUINN EMANUEL. The filing of QUINN EMANUEL's underlying action against YANI ROSENTHAL and CABLE COLOR, as guarantor, for unpaid fees is disturbing and offensive given what occurred between the parties. It highlights the arrogant and disrespectful treatment by QUINN EMANUEL of YANI ROSENTHAL (and CABLE COLOR) in the course of its dealings with Mr. Rosenthal.

10. In total, QUINN EMANUEL owes YANI ROSENTHAL millions of dollars to be determined at trial for the negligence, legal malpractice and breach of contract more fully described above. Further, YANI ROSENTHAL and CABLE COLOR owe QUINN EMANUEL nothing after his payments were made to the law firm for the work they underperformed after discounting and setoff for the damage they caused YANI ROSENTHAL (and CABLE COLOR) to be determined at trial and estimated in excess of several millions of dollars.

11. That CounterPlaintiff has retained undersigned counsel and agreed to pay him a reasonable fee for his services in filing this action.

## COUNT I
## PROFESSIONAL MALPRACTICE

12. CounterPlaintiff, CABLE COLOR realleges and reavers paragraphs 1 through 11 as if fully set forth herein.

13. CounterDefendant, QUINN EMANUEL was under a duty to act diligently at all material times consistent with its normal course of legal business and customary practices pursuant to a legal retainer agreement between the parties. (See Exhibits "A" and "B"). More specifically, CounterDefendant QUINN EMANUEL had a duty to YANI ROSENTHAL (and CABLE

COLOR as guarantor) to only bill for legal services it had provided and not to bill unreasonably and excessively to YANI ROSENTHAL which it did so blatantly in this case.

14. Further, CounterDefendant QUINN EMANUEL had a duty to YANI ROSENTHAL (and CABLE COLOR as guarantor) to not send OFAC an offensive email by accident which caused QUINN EMANUEL to be removed from the OFAC matter. This embarrassing and unprofessional conduct tainted YANI ROSENTHAL's efforts to be removed from the drug kingpin list maintained by OFAC and caused YANI ROSENTHAL losses for millions of dollars in business and irreparable harm to his reputation.

15. That CounterDefendant, QUINN EMANUEL negligently performed these legal services, and as a result YANI ROSENTHAL and CounterPlaintiff, CABBLE COLOR suffered financial harm.

16. That CounterDefendant, QUINN EMANUEL's acts and/or omissions were negligent and fell below the standard of care normally practiced by lawyers and law firms in the community of Washington D.C., nationwide and internationally.

17. As a direct and proximate result of CounterDefendants, QUINN EMANUEL's professional malpractice, YANI ROSENTHAL and CounterPlaintiff, CABLE COLOR, has suffered damages in an amount to be determined at trial, including costs and attorney's fees.

WHEREFORE, the CounterPlaintiff, CABLE COLOR demands judgment against the CounterDefendant, QUINN EMANUEL, for professional malpractice and damages in an amount to be determined at trial, plus interest, court costs and reasonable attorney's fees.

## COUNT II
## NEGLIGENCE

18. CounterPlaintiff, CABLE COLOR realleges and reavers paragraphs 1 through 17 as if fully set forth herein.

19. CounterDefendant QUINN EMANUEL by and through their agents, servants and employees, knew or should reasonably have known that it would be costly to YANI ROSENTHAL if QUINN EMANUEL mistakenly sent an offensive email to OFAC in the midst of and related to the case of YANI ROSENTHAL.  That despite such knowledge, CounterDefendants QUINN EMANUEL failed to insure the necessary care in handling the OFAC matter on behalf of YANI ROSENTHAL.

20. As a direct result of CounterDefendant QUINN EMANUEL's negligent conduct, YANI ROSENTHAL and CounterPlaintiff CABLE COLOR have suffered the economic injuries and damage in excess of millions of dollars as well as loss to his reputation described herein.

WHEREFORE, CounterPlaintiff, CABLE COLOR, demands judgment against CounterDefendant, QUINN EMANUEL, in negligence for damages, costs, and interest allowable by law, and an amount determined by a trial by jury.

## COUNT III
## BREACH OF CONTRACT

21. CounterPlaintiff, CABLE COLOR realleges and reavers paragraphs 1 through 20 as if fully set forth herein.

22. A valid Retainer Agreement (Exhibit "A") to guarantee underlying contract (Exhibit "B") exists between CounterPlaintiff CABLE COLOR and CounterDefendant QUINN EMANUEL.

23. That CounterPlaintiff, CABLE COLOR has fully complied with the terms of the Retainer Agreement.

24. That CounterDefendant QUINN EMANUEL has breached the terms, conditions, and obligations under the Retainer Agreement it had with CounterPlaintiff by charging en excessive and unreasonable fee for services rendered and by QUINN EMANUEL not fulfilling the OFAC services required of it and more fully described in the Retainer Agreement

25. CounterPlaintiff CABLE COLOR has been damaged as a result of CounterDefendant QUINN EMANUEL's breach.

WHEREFORE, CounterPlaintiff, CABLE COLOR. seeks damages it is owed by CounterDefendant, QUINN EMANUEL, for liquidated and actual damages, attorney's fees and costs, interest, and such other relief in law or equity which this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

26. CounterPlaintiffs hereby demand a trial by jury.

## CERTIFICATION OF SERVICE

The undersigned certifies that a true and correct copy of this CounterPlaintiff's Answer, Affirmative Defenses, CounterComplaint and Demand for Trial by Jury has been furnished via ECF to all counsel of record on September 12, 2022.

> LAW OFFICES OF DAVID S. HARRIS
> Attorney for Plaintiff
> David S. Harris, Esq.
> 6431 S.W. 39th Street
> Miami, Florida 33155
> Phone: 786-306-7278
>
> /s/ David S. Harris____